# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEMETRIO QUINTERO, | 1:11-cv-00839 GSA |
| Plaintiff, | **ORDER REGARDING MOTION TO DISMISS** |
| v. | (Document 14) |
| MARIPOSA COUNTY SCHOOL DISTRICT, et al. | |
| Defendants. | |

## INTRODUCTION

Pro se Plaintiff Demetrio Quintero alleges in his Second Amended Complaint ("SAC") that the Mariposa County School District and Does 1 through 8 violated his civil rights pursuant to Title 42 of the United States Code section 2000d. (*See* Doc. 9 at 6-11; *see also* Doc. 11 at 1.) In response, Defendant Mariposa County Unified School District ("MCUSD") seeks an order dismissing Plaintiff's SAC without leave to amend based upon Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure. (Doc. 14.) For the foregoing reasons, this Court DENIES MCUSD's motion.

//

1

# BACKGROUND

*Facts*

Plaintiff is a Hispanic-Native American man who contends that his sports officiating business, Dan Sports Officials Association, became accredited by the California Interscholastic Federation ("CIF") in May 2008. Thereafter, he sought to obtain officiating work with Defendant, to no avail.

Specifically, Plaintiff initially inquired about submitting a bid for sports officiating service contracts in August 2008, and submitted a business proposal to Dave Naranjo ("Naranjo"), the athletic director. Defendant had no formal Request for Proposal ("RFP") system in place. Despite submitting his business proposal, Plaintiff later learned the 2008 to 2010 sports officiating contacts were awarded to Northern California Officials Association ("NCOA") for winter and fall sports and to Central California Officials Group ("CCOG") for spring sports.

Plaintiff subsequently met and conferred with Defendant's administrators regarding the lack of a fair and equal RFP bidding process, as well as bias and unlawful race discrimination within the existing process.

In May 2010, Plaintiff submitted a bid for officiating in the 2010 to 2011 sports season. The sports officiating services contracts however were awarded to NCOA and CCOG as had occurred in the past.

In August 2010, Plaintiff met with Naranjo early to ensure an opportunity to submit a timely bid proposal for the 2011[1] to 2012 season service contracts. On that occasion, Plaintiff was informed that his organization lacked a sufficient number of officials necessary to service such a contract. Plaintiff is informed however that all sports officials are independent contractors and "work[] out of the same pool," inferring therefore that any number of individuals would be

---

[1] The SAC reads "2010-2012," however, because the SAC already referenced a bid having been submitted and an award having been made, the Court presumes for purposes of the motion that Plaintiff intended to refer to the 2011-2012 season.

2

available to officiate games were he awarded a contract. Thus, Plaintiff questioned the veracity of Naranjo's statement that his organization lacked a sufficient numbers of officials.

In October 2010, Naranjo informed Plaintiff that both NCOA and CCOG were awarded sports officiating contracts because each was CIF accredited, seeming to infer Plaintiff's business was not similarly accredited.

In March 2011, Plaintiff learned from an official with CCOG that the official had been personally advised by Naranjo that CCOG had been awarded the 2011 spring sports contract (and that NCOA had been awarded the fall and winter sports contract for that same term) during a night time basketball game. When Plaintiff inquired of the official about how the contract could be awarded when CCOG had not even submitted a bid, he was directed to contact Naranjo with questions.

In sum, Plaintiff contends that MCUSD violated federal law and failed to employ an open, fair and legal bidding process in awarding its sports officiating contracts, thereby denying access to qualified minority contractors.

*Procedural History*

On May 23, 2011, Plaintiff filed his original complaint and application to proceed without prepayment of fees and costs. (Docs. 2-3.)

On June 6, 2011, this Court issued an Order dismissing the complaint with leave to amend. (Doc. 5.) Plaintiff filed his first amended complaint ("FAC") on July 11, 2011. (Doc. 6.)

On October 27, 2011, this Court issued an Order dismissing Plaintiff's FAC and granting him leave to file an amended complaint. More particularly, the Court held that because the school district is an arm of the state, it is "shielded from suit in federal court under the Eleventh Amendment," and thus, Plaintiff was unable to state cognizable claims pursuant to Title 42 of the United States Code sections 1981, 1983, 1985 and 1986. Further, Plaintiff was advised the school district's board members were similarly protected in their official capacities. (Doc. 8 at 5-

3

6.) Plaintiff's state law claims were also barred by the Eleventh Amendment. (Doc. 8 at 6-9.) Nevertheless, Plaintiff was afforded a final opportunity to amend his complaint.

On December 1, 2011, Plaintiff filed his SAC, asserting a single cause of action[2] pursuant to Title 42 of the United States Code section 2000d against MCUSD. Plaintiff seeks relief in the form of statutory and actual damages, reasonable attorney's fees, costs of suit, and any other relief the court were to deem just and proper. (Doc. 9.)

On February 24, 2012, Defendant filed the instant motion to dismiss following service of the summons and complaint by the United States Marshal. (Docs. 14, 14-1.) Relatedly thereto, Defendant also filed a Request for Judicial Notice. (Doc. 14-2.)

On March 12, 2012, Plaintiff filed an opposition to Defendant's motion to dismiss. (Doc. 20.)

Following the consent of both parties (Docs. 17-19), the matter was assigned to the undersigned magistrate judge for all purposes on March 15, 2012. (Doc. 21.)

On March 21, 2012, Defendant filed a reply to Plaintiff's opposition. (Doc. 23.)

On April 9, 2012, the hearing on the motion was taken off calendar and the matter was deemed submitted pursuant to Local Rule 230(g). (Doc. 24.)

**DISCUSSION**

A.   *Legal Standards Applicable*

Dismissal is appropriate pursuant to the Federal Rules of Civil Procedure where the court lacks subject matter jurisdiction over a claim. Fed. R. Civ. P. 12(b)(1). The Court presumes that a claim lies outside the jurisdiction of federal courts unless proven otherwise. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Plaintiff bears the burden of establishing that jurisdiction exists. *See Rattlesnake Coalition v. U.S. E.P.A.*, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007); *Indus. Techtonics, Inc. v. Aero Alloy*, 912 F.2d 1090,

---

[2] On December 9, 2011, this Court issued an order, *inter alia*, clarifying that only the section 2000d claim was viable, and that any references in the SAC to sections 1981, 1983, 1985 and 1986 of Title 42 of the United States Code were to be disregarded as those claims were dismissed by the October 26, 2011, order. (See Doc. 11.)

4

1092 (9th Cir. 1990). A Rule 12(b)(1) jurisdictional attack may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. In resolving a facial attack, the Court must accept the factual allegations of the complaint as true and draw all reasonable inferences in Plaintiff's favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009). In resolving a factual attack, the Court "may review evidence beyond the complaint without converting the motion to dismiss to a motion for summary judgment." *Safe Air*, 373 F.3d at 1039. The Court may not resolve genuine factual disputes if the jurisdictional issue and substantive issues are intertwined. *See id.; Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Where such issues are intertwined, the Court must find that jurisdiction exists and address the motion to dismiss as a motion for summary judgment attacking the merits of Plaintiff's case. *Safe Air*, 373 F.3d at 1039-40 n.3.

A motion to dismiss pursuant to Federal Rules of Civil Procedure rule 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. Such dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a Federal Rules of Civil Procedure rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. at 570. Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . are not entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. at 681. A court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 764, 767 (8th Cir. 2003) (citation omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

//
//

     Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). Where the plaintiff is pro se, the Court has an obligation to construe the pleadings liberally and to afford the plaintiff the benefit of any doubt. *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, a pro se plaintiff must still allege facts sufficient to allow a reviewing court to determine that a claim has been stated. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

    **B.**    ***Dismissal Pursuant to a Lack of Jurisdiction***

     Because Plaintiff seeks only compensatory damages, Defendant MCUSD asserts a facial attack alleging that Title VI does not afford monetary damages to an individual whom has suffered discriminatory treatment. It contends that because Plaintiff seeks only monetary damages he does not have standing and therefore the SAC should be dismissed. More particularly, Defendant cites to *Davis v. Spanish Coalition for Jobs, Inc.*, 676 F.Supp. 171, 173 (N.D. Ill. 1988) and *Gilliam v. City of Omaha*, 388 F.Supp. 842 (Neb. 1975) in support of its position. (Doc. 14-1 at 3-4; *see also* Doc. 23 at 1-2.)

     In *Alexander v. Sandoval*, 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001), the United States Supreme Court noted that its previous decision concluded "that private individuals could not recover for compensatory damages under Title VI except for intentional discrimination." *Alexander*, at 282-283, citing to *Guardians Assn. v. Civil Serv. Comm'n of New York City*, 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983); *see also Neighborhood Action Coalition v. City of Canton, Ohio*, 882 F.2d 1012, 1015 (6th Cir. 1989). Further, the Ninth Circuit has held that "the 'remedies, procedures, and rights' available under Title VI of the Civil Rights Act" do allow for an award of money damages in cases of this type. *See Smith v. Barton*, 914 F.2d 1330, 1336 (9th Cir. 1990).

     Here, Plaintiff has indeed only sought compensatory damages, rather than a combination of equitable and compensatory relief. Nevertheless, Plaintiff has asserted intentional

7

discrimination rather than disparate treatment. As a result, this Court disagrees with Defendant's assertion that money damages are unavailable under Title VI, nor is this Court persuaded by the non-binding authority upon which Defendant relies.

### C. *Dismissal for a Failure to State a Claim*

#### 1. **Statute of Limitations**

MCUSD alleges that only conduct that occurred two years prior to Plaintiff having filed his original complaint in May 2011 - or conduct no earlier than May 23, 2009 - may form the basis of the suit. Defendant further asserts that because Plaintiff references facts prior to that period, any claim based upon a period prior to late May 2009 is barred by the statute of limitations. (Doc. 14-1 at 5.)

The Ninth Circuit has held "that claims brought under 42 U.S.C. § 2000d are governed by the same state limitations period applicable to claims brought under [42 U.S.C.] § 1983." *Taylor v. Regents of Univ. of California*, 993 F.2d 710, 712 (9th Cir. 1993). The limitations period applicable to claims brought under Title 42 of the United States Code section 1983 is that state's limitations period for personal injury actions. *Id*. at 711. In California, the statute of limitations period for personal injury actions is two years. Cal. Civ. Proc. Code § 335.1.

Therefore, because Plaintiff filed his complaint on May 23, 2011, any allegations based on events that occurred prior to May 23, 2009, are barred by the statute of limitations. As discussed more fully below, this Court finds Plaintiff has asserted timely claims.

#### 2. **A Title VI Claim**

Section 2000d of Title 42 of the United States Code provides as follows:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance.

Congress has abrogated States' sovereign immunity for "violations [of Title VI] that occur in whole or in part after October 12, 1986." 42 U.S.C. § 2000d7(b) (Supp. 1987); *see also*

*Alexander v. Sandoval*, 532 U.S. at 280 (Congress has expressly abrogated states' sovereign immunity under the Eleventh Amendment for private actions under Title VI).

In *Fobbs v. Holy Cross Health Systems,* 29 F.3d 1439, 1447 (9th Cir. 1994), *overruled on other grounds by Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (9th Cir. 2001), the Ninth Circuit held that in order to state a claim under section 2000d of Title 42 of the United States Code, a plaintiff must allege that "(1) the entity involved is engaging in racial discrimination; and (2) the entity involved is receiving federal financial assistance." *Fobbs*, at 1447. A plaintiff is not required to plead intent in the complaint, nor must he plead that he is the intended beneficiary of the federal program or funding involved. *Id*.

          **a.    Racial Discrimination**

According to Defendant, "Plaintiff does not allege any facts that MCUSD engaged in racial discrimination," only that Plaintiff "did not receive a contract award." Defendant claims the SAC fails to provide information "as to how the MCUSD discriminated against Plaintiff," and thus the claim fails to establish the first of two required elements. (Doc. 14-1 at 6; *see also* Doc. 23 at 2-3.)

Contrary to Defendant's assertion, this Court finds that Plaintiff has stated sufficient facts pertaining to racial discrimination. Among other facts, in the factual summary, realleged and incorporated into his cause of action, Plaintiff's SAC indicates he is of Hispanic and Native American ancestry. (Doc. 9 at 2, 3.) Plaintiff believes that MCUSD's "lack of a fair and equal" RFP process "is based on unlawful race discrimination." More particularly, he alleges that his business proposal that was misplaced and a "white contractor was not required to submit a bid." (Doc. 9 at 4.) Plaintiff contends that despite knowing he was qualified to perform services under any officiating contract, Defendant "decided to interview only the two (2) white contractors and did not interview the Plaintiff, the only minority contractor, for the 2010-2011" season. (Doc. 9 at 4.) Plaintiff states that Naranjo advised him in August of 2010 that he "did not have enough officials in his organization to service the contract," however, Plaintiff alleges that was not the

9

case. (*See* Doc. 9 at 5.) Finally, Plaintiff indicated that "[i]nformation about the availability of the contracts and/or any subsequent changes was not made available to any minority contractors." (Doc. 9 at 6.)

With specific regard to the cause of action as asserted in the SAC, Plaintiff contends that MCUSD knew he was of Hispanic and Native American ancestry, and that as a result of his race MCUSD failed to provide him with "an equal opportunity to obtain 'all sports' officiating services contract work." (Doc. 9 at 7, ¶¶ 13-14.) Plaintiff further contends that: MCUSD awards contract work only to "non-Hispanic Native-Americans, and only to non-minority sports officiating contractors" (Doc. 9 at 7, ¶¶ 15-16); that MCUSD board members or administrators serving on the selection committee "actively participated in the denial of Plaintiff's civil rights, and in [its] continued unlawful race discrimination, by failing to fairly and properly consider Plaintiff's qualifications, and by intentionally refusing and failing to investigate the discriminatory practices of [its] contractor, NCOA . . ." (Doc. 9 at 7-8, ¶¶ 17, 19); and that "other similarly situated non-minority contractors have not been denied the opportunity to fairly compete for work," believing that to be retaliation for his having complained about being unlawfully discriminated against (Doc. 9 at 9-10, ¶ 24).

A pro se party's pleading is to be liberally construed, and as such, Plaintiff has met his burden of facial plausibility. Moreover, he has provided sufficient facts for this Court to draw a reasonable inference that Defendant is liable, or facts that offer more than a sheer possibility that Defendant acted unlawfully. *Ashcroft v. Iqbal*, 556 U.S. at 678.

### b.     Federal Financial Assistance

In a somewhat confusing argument, Defendant asserts that "[t]o the extent that Plaintiff's claim is based on any 2012 contract(s), Plaintiff fails to state such a claim because he has not pled a requirement [*sic*] element for such a claim." (Doc. 14-1 at 6.)

Plaintiff's SAC states that Defendant is a recipient of federal funds for its athletic programs, including sports officiating service contracts, and that it received such funds in 2009, 2010 and 2011 and applied them to its middle and high school sports programs. (Doc. 9 at 6, ¶ 11.) Further, the SAC asserts that Defendant "received the aforesaid federal funds from the United States Secretary of Education, or through some other federal funding department during 2009, 2010 and 2011." (Doc. 9 at 7, ¶ 12.)

Plaintiff's claim pertains to bids he submitted in 2010 and 2011 prior to filing his original complaint in May 2011. He does not assert a 2012 claim per se; rather, it appears that Plaintiff's references to 2012 were in form of a bid relevant to the 2011-2012 *season*. Therefore, this Court finds that Plaintiff has properly pled the federal financial assistance component of his section 2000d claim.

### c. Bids Submitted by Plaintiff

Defendant contends Plaintiff's SAC "is devoid of any references that Plaintiff submitted a bid for any [] contracts" related to the "2010-2011 all sports officiating services contract" or the "2010-2012 all sports officiating services contract." Thus, defendant contends Plaintiff has not alleged facts sufficient to assert a Title VI claim. (Doc. 14-1 at 6-7.)

Again, pro se complaints are to be liberally construed. *See Haines v. Kerner*, 404 U.S. at 520; *Bretz v. Kelman*, 773 F.2d at 1027 n.1. So construed, Plaintiff's references are sufficient to establish he submitted bids in 2010 and 2011 for the then-upcoming sports officiating seasons and their related contract periods. More specifically, he referenced the following: submitting a business proposal in August 2008 pertaining to the "2008-2010 contract" (Doc. 9 at 4(b)); a second proposal submitted for spring sports because the original proposal had been misplaced (Doc. 9 at 5(c)); and a submission in May 2010 referring to the "2010-2011" contract period (Doc. 9 at 4(e)-(f)).

It can also be inferred that Plaintiff submitted bids from the following references: he claims he was not interviewed prior to the 2010-2011 contracts being awarded (*see* Doc. 9 at

4(f)); that he met with Naranjo in August 2010 "early enough for an opportunity to submit a timely contract bid proposal" for the 2010-2012 period (Doc.9 at 5(g)); was thereafter informed by Naranjo via telephone that Defendant "decided to stay with NCOA and CCOG" (Doc. 9 at 5(i)); and by his own reference to "March 2011" and "being rejected . . . again" (Doc. 9 at 5(j)).

Were the Court to accept Defendant's assertions that Plaintiff's SAC "is devoid of any references that [he] submitted a bid," it would effectively hold Plaintiff to the same pleading standard expected of one represented by counsel.  This Court declines to do so, and in fact, may not do so.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. GRANTS MCUSD's request to take judicial notice of the pleadings and orders filed in this action; and

2. DENIES MCUSD's motion to dismiss Plaintiff's SAC.

IT IS SO ORDERED.

Dated:   **May 24, 2012**         /s/ **Gary S. Austin**
                                 UNITED STATES MAGISTRATE JUDGE